NATIONAL SASH & DOOR CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5788. Promulgated December 23, 1926.

1. Auditors working on the petitioner's books of account for the year 1918 discovered in May, 1919, that although there was no shortage in the cash account of petitioner as of December 31, 1918, Liberty bonds of the par value of $6,600 were missing in May, 1919, and in an audit of the petitioner's books of account in October or November of 1919, discovered a shortage in cash as of October 22, 1919, of $13,441.80. After the correction of two minor adjustments the petitioner determined that it had sustained a loss through embezzlement of $19,464.01, which amount it deducted from gross income in its income-tax return for the year 1919 as a loss sustained in the year 1919. In the audit of the petitioner's return this loss was allowed as a deduction from the gross income of 1918 and disallowed as a deduction from gross income in the return for 1919. *Held,* upon the evidence, that the loss was sustained within the year 1919.

2. Depreciation upon machinery was sustained at the rate of 10 per cent per annum for the years 1920 and 1921, instead of at the rate of 5 per cent per annum, as determined by the Commissioner.

*Morris B. Redmann, Esq.,* and *C. G. Robinson, C. P. A.,* for the petitioner.

*M. N. Fisher, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits tax for the years 1919, 1920, and 1921, as follows:

| | |
|---|---|
| 1919 | $11,826.28 |
| 1920 | 6,209.94 |
| 1921 | 2,081.98 |
| | 20,118.20 |

The petitioner alleges error in the determination of the deficiencies as follows:

(1) The disallowance, as a deduction from income in the calendar year 1919, of an item of $19,464.01, representing an embezzlement

by an employee, based on the assumption that said embezzlement occurred in the year 1918.

(2) The allowance of $4,490.38, $4,640.58 and $4,701.32 for depreciation on machinery for the years 1919, 1920, and 1921, respectively, instead of $8,980.76, $9,281.16 and $9,402.64 for the three years, respectively.

FINDINGS OF FACT.

The petitioner is a Louisiana corporation engaged in the business of manufacturing window sash, doors, etc. It had in its employ a man by the name of Loog, in whom the officers of the corporation reposed great confidence. Its books of account were regularly audited by a firm of certified public accountants for the years 1916 to 1921, inclusive. The audit of its books of account for the calendar year ended December 31, 1918, was made in May, 1919. This audit showed cash on hand at December 31, 1918, of $1,502.72. Cash in banks was verified by certificates from several depositaries and petty cash was verified by actual count as nearly as could be determined. The cash in the banks was found to be $945.14. The books of account at December 31, 1918, showed Liberty bonds, war savings stamps, etc., $34,468. The auditors, when they made their examination in May, 1919, could not then locate $6,600 of Liberty bonds. When Loog was questioned about them he stated he had turned them over to one Walker, an officer of a local trust company, for safe keeping. Walker told the auditors that he did not have them and that if he had received them for deposit he would have given a receipt for them. The auditors in their audit, dated June 3, 1919, stated to the petitioner:

> We duly examined all of these securities with the exception of the item of $6,600, which represents for the most part various issues of bonds bought in during the year from employees. We did not examine these bonds for the reason that your Mr. Loog was unable to locate same, although he has made several attempts to do so, and at this date they are still unaccounted for. We will strongly recommend that immediate steps be taken to settle the matter definitely as to whether these bonds are lost or not.

Officers of the petitioner became suspicious of Loog when they learned in the fall of the year that he was betting on horse races. The firm of accountants which regularly did the auditing for the petitioner was immediately requested to make an audit of the petitioner's books of account, and such audit was made as of October 22, 1919. This audit disclosed a shortage in the cash account of $13,441.80, which, after the adjustment occasioned by a deduction of $577.79, showed an actual shortage in cash of $12,864.01 and in Liberty bonds, $6,600—a total shortage in the amount of $19,464.01.

Loog was immediately discharged by the petitioner, but owing to the fact that he was a man with a large family and had no property he was neither prosecuted nor sued.

In its income-tax return for 1919 the petitioner claimed the deduction from gross income of $19,464.01 as a loss due to embezzlement. The Commissioner disallowed this deduction from the gross income of 1919, but amended the petitioner's income-tax return for 1918 by allowing the amount as a deduction from the gross income of 1918.

The petitioner operates a number of planing and mortising machines. The knives and "heads" of these machines, as well as the bearings, soon wear out. These may be replaced. There is considerable obsolescence in these machines. More efficient machines are developed from time to time and the experience of manufacturers in this line is that, on the average, it is unprofitable to operate machines which have been in use from 7 to 10 years. In most cases the machines are turned in for new machines within a period of from 7 to 10 years. In the determination of deficiencies for the years 1919, 1920, and 1921, the Commissioner allowed a deduction for depreciation and obsolescence in respect of the machines owned by the petitioner at the rate of 5 per centum per annum and disallowed the claim of the petitioner to a deduction for depreciation at the rate of 10 per centum per annum.

### OPINION.

SMITH: With respect to the embezzlement question involved in this proceeding, the only question is whether the loss was sustained within the year 1918 or 1919. The petitioner claimed the deduction from gross income of the year 1919. It had no knowledge that it had sustained any loss through embezzlement in the year 1918. It learned in May, 1919, that $6,600 of Liberty bonds were missing, and it further learned of a shortage in the cash account as of October 22, 1919. Certified public accountants who audited its books of account for the year 1918 did not discover any shortage in cash at December 31, 1918.

The evidence before us indicates that the embezzlement occurred in the year 1919. Upon the record it must be decided that the loss was sustained in the year 1919 and that the amount thereof is a legal deduction from gross income in that year.

The second question relates to the rate of depreciation sustained upon the woodworking machinery operated by the petitioner. An officer of the petitioner, who had had considerable experience with woodworking machinery of the character of that owned by the petitioner, testified that such machinery had a life of not to exceed 10

years and that it was the practice of such manufacturers usually to replace worn machines by new machinery within a 10-year period. Upon the evidence it must be held that depreciation was sustained at the rate of 10 per cent, rather than at the rate of 5 per cent, as determined by the Commissioner.

*Judgment will be entered on 15 days' notice, under Rule 50.*